FILED

2010 Feb-23  PM 03:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

MARY T. BURGESS,

     Plaintiff,

    vs.                        CIVIL ACTION NO.: CV 09-J-1548-NW

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

## MEMORANDUM OPINION

This matter is before the court on the record and briefs of the parties. This court has jurisdiction pursuant to 42 U.S.C. § 405. The plaintiff seeks reversal or remand of a final decision of the Commissioner. All administrative remedies have been exhausted.

## PROCEDURAL BACKGROUND

On July 31, 2006, the plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging she had become disabled as of January 15, 2002[1] (R. 53). Plaintiff's applications were denied (R. 6) and on June 19, 2008, the plaintiff had a hearing before an

---

[1]The examiner who completed the paperwork on behalf of defendant noted that the plaintiff "could not recall any dates or doctors -- her husband had to assist her with virtually every question" (R. 54).

administrative law judge (ALJ) (R. 364).  At the hearing, the ALJ announced that

the evidence supported a finding that the plaintiff was disabled as of July 31,

2006,[2] thus, the sole issue at the hearing was whether the plaintiff was disabled

between January 15, 2002, and March 31, 2002, the plaintiff's date last insured.

(R. 364).  The ALJ denied this portion of the plaintiff's claim on July 14, 2008 (R.

5H-5Y) and the Appeals Counsel denied review of that decision on July 17, 2009

(R. 4-6).  The ALJ's decision thus became the final order of the Commissioner.

*See* 42 U.S.C. § 405(g).

The plaintiff's sole argument is that the decision of the ALJ, finding the

plaintiff not disabled prior to July 31, 2006, is an error of law and that the same

should be reversed and benefits awarded because the plaintiff met and continues to

meet Listing 12.05C.

## FACTUAL BACKGROUND

_____The plaintiff completed at least the eighth grade in special education[3] (R.

---

[2]Because the plaintiff became income ineligible for SSI after her husband received an award of Disability Insurance Benefits, the plaintiff received no benefit from this determination by the ALJ.

[3]There is conflicting evidence in the record as to exactly how far in school the plaintiff went, with school records for plaintiff's transfer from Hawaii to "mainland" reflecting she may be entering the 10th grade (R. 111).  However, these school records, where they actually show grade level functioning, reflect plaintiff functioning at second to third grade levels (R. 108, 115,118). Unfortunately, the majority of these records are undated.

108-123, 369).  Those records list her as "MRE" (R. 111).  She did not attend

ninth grade because the principal told her father that the plaintiff would be better

off working in a factory because she would never go to college (R. 370).   In 1997

the plaintiff was diagnosed with new onset diabetes at which time she had a blood

sugar of 577 (R. 135).  In 1999 her blood sugar was noted to range from 150-400

(R. 156).  A record for 2001 notes that the plaintiff "has a long history of labile

diabetes and currently her sugars are running in the 300s (R. 144).  A July 2001

lab test shows the plaintiff's blood sugar to be 435 (R. 161).  Her hemoglobin A1C

was noted to be in the 8½ range (R. 151, 170, 173-174).  *See also* R. 206, 219-225

In March 2008 the plaintiff was administered the WAIS-III (R. 337).  The

test results reflected a full scale IQ score of 67; a verbal sore of 67 and a

performance scale score of 74, placing the plaintiff in the "mild mental retardation

range of intellectual functioning" (R. 337).  John Haney, Ph.D., who administered

this test, opined that the plaintiff "appeared rather fidgety and sad.  She was

cooperative, but was not certain as to the reason for her appointment" (R. 337).

He noted that the plaintiff's "actual Full Scale IQ score might be slightly higher"

(R. 337).  Dr. Haney concluded that the plaintiff was regarded as truthful and that

her ability to function in most jobs was "moderately to severely impaired due to

[her] physical, emotional, vocational and intellectual limitations" (R. 338).  He

3

then listed plaintiff's diagnoses as major depressive disorder, moderate, and borderline intellectual functioning (R. 338).  In a Medical Source Opinion Form (Mental), Dr. Haney opined the plaintiff had moderate limitations in all areas, except for using judgment in detailed or complex work-related decisions; understand, remember and carry out detailed or complex instructions; and maintain attention, concentration or pace for at least two hours, in which her limitations were marked (R. 339-340).

At the hearing, the plaintiff was unable to relay her sip code or phone number (R.366).  She stated she had never had a driver's license (R. 368).  At the ALJ's instruction, the plaintiff demonstrated her reading and math abilities during the hearing (R. 371-373).  She testified that when her blood sugar is low, she doesn't remember things and wanders off, "not knowing how I got there and why, what I'm doing there.  My husband, I have to admit, is my caretaker" (R. 376).  She added that when her blood sugar is high, "I'm rude, belligerent, and ornery" (R. 377).  She added that

> I find myself forgetting things now that I feel I shouldn't be
> forgetting, that I should remember.  I find myself getting more
> frustrated and angry with my sugar because I feel like no matter how
> hard I'm trying, I don't seem to be able to keep it under control.  So I
> become mad at the whole world, and I end up falling into a
> depression where I just shut myself off from the world and people,
> and just stay in the house and do nothing.

4

R. 377.

The vocational expert present at the hearing testified the plaintiff's past relevant work ranged from light to medium and unskilled to the low-end of semi-skilled work (R. 376).  He was asked no hypothetical questions regarding the impact on substantial gainful employment of limitations similar to the plaintiff's, given her age and educational level.

The ALJ held that the plaintiff's insulin dependent diabetes mellitus I is a "severe" impairment based on the requirements in Regulations 20 CFR §§ 404.1520(b) and 416.92(b) (R. 5M).  He found that "[b]eginning July 31, 2006, the claimant has depression" (R. 5M).  The ALJ further listed "borderline intellectual functioning" as a severe impairment[4] (R. 5M).  Although no explanation is provided as to where this diagnosis originated, the ALJ does state

---

[4]In addition to diagnosing the plaintiff with "borderline intellectual functioning," the ALJ further determined that "the validity of the claimant's test scores were possibly tainted by her depressed mood and her inattentiveness" (R. 5P).  As another court noted:

> The problem with the ALJ's conclusion is that, contrary to the clear law of this circuit, it substitutes the ALJ's opinion for that of the consulting psychologist. Testimony of an examining doctor must be given substantial or considerable weight unless "good cause" is shown to the contrary. *MacGregor*, 786 F.2d at 1053. While the ALJ is entitled to make credibility determinations, the ALJ may not substitute his judgment for the judgments of experts in their field of expertise.

*Matthews v. Barnhart,* 347 F.Supp.2d 1093, 1101 (M.D.Ala.2003).

that the plaintiff's IQ scores "fall within the mild mental retardation range.  Doctor

Haney opined that the claimant's full scale IQ might actually be slightly higher"

(R. 5O).

The ALJ specifically addressed Listing 12.05C in his decision, noted that

the plaintiff's scores fell within the range of this Listing, but then concluded that

the plaintiff really was not within this range because Dr. Haney wrote "borderline

intellectual functioning" although he found that the scores were in the "mild

mental retardation" range (R. 5O-5P).   The ALJ further determined that the

plaintiff's activities of daily living showed "good adaptive functioning" and thus

the evidence supported a finding of borderline intellectual functioning and not

mild mental retardation[5] (R. 5P).  Additionally, the ALJ failed to consider or

address Dr. Haney's finding that "the patient's ability to function in most jobs

appeared moderately to severely impaired due to the patient's physical, emotional,

vocational and intellectual limitations" (R. 338).

_____

[5]The difference between mild mental retardation and borderline intellectual functioning is
much less significant than that set forth by the ALJ.  The DSM-IV explains that "there is a
measurement error of approximately 5 points in assessing IQ, although this may vary from
instrument to instrument (e.g., a Weschler IQ of 70 is considered to represent a range of 65-75).
Thus, it is possible to diagnose Mental retardation in individuals with IQs between 70 and 75
who exhibit significant deficits in adaptive behavior.  *Diagnostic and Statistical Manual of
Mental Disorders*, 4th ed 2000 American Psychiatric Association at 41.  The DSM-IV also notes
that someone in the mild mental retardation range can acquire academic skills up to
approximately the sixth grade level, and achieve social and vocational skills necessary for self-
support, but may need supervision, guidance and assistance.  Id. at 43.

The ALJ concluded that while the plaintiff could not perform past relevant work after July 31, 2006, and that she had no transferrable work skills, prior to July 31, 2006, the plaintiff was not disabled and could have performed her past relevant jobs of "cleaner" and "gift wrapper" through her date last insured, March 31, 2002 (R. 5S).  The ALJ seems to base his logic in part on the fact that the plaintiff showed no earnings for the years 1997-1999 even though her husband testified that the plaintiff was working cleaning the bowling alley[6] (R. 5T).  No mention is made of plaintiff's testimony that she lost money cleaning the bowling alley (R. 373).

The ALJ further finds that plaintiff's "own handwriting establishes that her adaptive functioning is better than 12.05C.  She maintains a diabetic log ... and she testified that she maintains this log and what has been written is in her handwriting"[7] (R. 5T).  However, her husband testified that he keeps a close check on her logs, and she fills them out with his supervision (R. 382).  He explained that "I don't really want to say I harp on her, but I do.  I keep a close check on

_____

[6]The ALJ's opinion reads, in relevant part, "There is a natural tendency to pay the least amount of taxes possible.  The claimant's husband submitted an affidavit that they cleaned the bowling alley from 1995-2000.... The claimant's earnings record has no earnings posted for 1997, 1998 and 1999...." (R. 5T).

[7]The court questions the relevance of good penmanship to whether plaintiff meets Listing 12.05C.

7

them because she will forget what she, you know, like she'll test her sugar.
Between the time she tests it and the time she writes it down, she will forget it" (R.
382).

## STANDARD OF REVIEW

The initial burden of establishing disability is on the claimant, who must
prove that due to a mental or physical impairment he is unable to perform his
previous work.  If the claimant is successful, the burden shifts to the
Commissioner to prove the claimant can perform some other type of work existing
in the national economy.  *Walker v. Bowen,* 826 F.2d 996, 999 (11th Cir. 1987).

The court's review of the factual findings in disability cases is limited to
determining whether the record contains substantial evidence to support the ALJ's
findings and whether the correct legal standards were applied.  42 U.S.C. § 405(g);
*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Wolfe v. Chater*, 86 F.3d 1072,
1076 (11th Cir. 1996).  "Substantial evidence" is defined as "such relevant
evidence as a reasonable mind might accept as adequate to support a conclusion."
*Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S.
197, 229) (1938).

This court must also be satisfied that the decision of the Commissioner is
grounded in the proper application of the appropriate legal standards. *McRoberts*

*v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988). This court may not decide facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ, even if the court finds that the weight of the evidence is against the Commissioner's decision. *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir. 1990). This court must affirm the decision of the ALJ if it is supported by substantial evidence. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). However, no such presumption of correctness applies to the Commissioner's conclusions of law, including the determination of the proper standards to be applied in reviewing claims. *Brown v. Sullivan,* 921 F.2d 1233, 1235 (11th Cir. 1991). Furthermore, the Commissioner's "failure to ... provide the reviewing court with sufficient reasoning for determining that the proper legal analysis had been conducted mandates reversal." *Cornelius v. Sullivan,* 936 F.2d 1143, 1145-1146 (11th Cir. 1991).

## **LEGAL ANALYSIS**

The plaintiff's sole argument is that the ALJ did not properly evaluate the plaintiff's intellectual functioning. Specifically, the plaintiff argues that the ALJ erred by failing to find the plaintiff disabled because of mental retardation under Listing 12.05C. Plaintiff's brief, at 7. Under the diagnostic definition, "[m]ental retardation refers to significantly subaverage general intellectual functioning with

9

deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports the onset of the impairment before age 22." 20 C.F.R. Part 404, Subt. P, App. 1, 12.05 (2009).   Listing 12.05C states that the required level of severity for mental retardation is met when the claimant has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional significant work-related limitation of function." 20 C.F.R. Part 404, Subt. P, App. 1, 12.05 (2009). In order for a claimant to meet the requirements under 12.05C, the impairment must satisfy the diagnostic description of 12.05 and the criteria of Listing 12.05C. 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00A (2009).

The results of the I.Q. test administered by Dr. Haney fall within the range of  scores necessary under 12.05C (R. 337).  Specifically, plaintiff scored a 67 on the full scale I.Q. test and the verbal scale I.Q. test.  *Id.*  There is no evidence that the tests conducted by Dr. Haney were not reliable or valid.  He noted only that the plaintiff's actual full scale IQ score "might be slightly higher" (R. 337).  Dr. Haney did not indicate that the plaintiff intentionally performed poorly on the tests.  An I.Q. test creates a rebuttable presumption of a fairly constant I.Q. during a person's lifetime absent evidence of a sudden trauma that can cause retardation.

*Hodges v. Barnhart,* 276 F.3d 1265, 1268 (11th Cir.2001).[8]  Therefore, there is a

presumption that plaintiff has functioned generally at this level throughout her life.

The plaintiff's poor performance as a student and her failure to complete a high

school education provide evidence that the plaintiff has always functioned at this

intellectual level.  Additionally, although the ALJ faults the plaintiff for "wait[ing]

4½ years after her alleged onset date to file for disability" (R. 5T), the court notes

this may be evidence of plaintiff's level of intellectual functioning.

Even assuming that the plaintiff's full scale IQ score was slightly higher

than that reflected by testing, as posited by Dr. Haney, she still had a verbal IQ

score of 67.  According to the regulations, the Commissioner uses the lowest of

the IQ scores obtained when considering 12.05.[9]  See 20 C.F.R. Part 404, Subpart

---

[8]*Hodges* cites two other appellate cases with approval for the presumption finding that
IQ's remain fairly constant throughout life. *See Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir.2001)
("Mental retardation is not normally a condition that improves as an affected person ages....
Rather, a person's IQ is presumed to remain stable over time in the absence of any evidence of a
change in a claimant's intellectual functioning."); *Luckey v. U.S. Dept. of Health & Human
Servs.*, 890 F.2d 666, 668 (4th Cir.1989) (holding absence of IQ test in developmental years did
not preclude finding of mental retardation predating age twenty-two and courts should assume an
IQ remained constant absent evidence indicating change in intellectual functioning).  Defendant's
argument that the plaintiff was incorrect in her citation to *Hodges,* because she failed to establish
that she had deficits in adaptive functioning either before or after age 22, completely ignores that
the plaintiff was in special education all the way through elementary school, until her father was
encouraged to remove her from school when she was in the ninth or tenth grade.  One note from
her school records states "We feel that Mary has benefitted greatly by being in our Sp.Ed.
Program and we recommend that she continue in a Sp. Class for Educable in the States" (R. 121).

[9] "In cases where more than one IQ is customarily derived from the test administered,
e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use

P., App. 1, § 12.00D(6)(c) (2009).  Dr. Haney also concluded that the plaintiff's

ability to function in a job would be moderately to severely impaired due to her

physical, emotional, vocational and intellectual limitations (R. 338).  Although Dr.

Haney listed "Borderline Intellectual functioning" in his conclusion, he gave no

explanation as to why this better described the plaintiff's limitations, especially in

light of his other findings (R. 338).  The ALJ did not give significant weight to the

opinions and assessment of the plaintiff from Dr. Haney, but instead seized solely

on that one, unexplained conclusion.  The ALJ found that, "despite borderline

intellectual functioning" the plaintiff had been able to perform her past relevant

work as a cleaner and a gift wrapper (R. 5S).  However, the plaintiff's work

history should not be used to discount the results of the tests given by Dr. Haney.[10]

The court finds that the ALJ erred in substituting his judgment for that of the

medical expert who performed the objective I.Q. tests.  Given the plaintiff's I.Q.

scores, educational background, and Dr. Haney's finding the plaintiff would be

moderately to severely impaired due to her physical, emotional, vocational and

intellectual limitations,  the court finds that the plaintiff meets the I.Q. range

the lowest of these in conjunction with 12.05." 20 C.F.R. Part 404, Subpt. P, App. 1,
§12.00D(6)(c) (2004).

[10] *See Freeman v. Schweiker,* 681 F.2d 727 (11th Cir. 1982).  A hearing officer "may not arbitrarily substitute his own hunch or intuition for the diagnosis of medical professional." *Marbury v. Sullivan,* 957 F.2d 837, 840-41 (11th Cir. 1992).

12

requirement and holds that the plaintiff's deficits in adaptive functioning existed

before the age of 22.

The defendant's reliance on *Popp v. Heckler* is misplaced.  Unlike the facts

of this case, the plaintiff there "was close to completing the requirements for a

bachelor of science degree and had a history of having taught high school algebra.

Moreover, Popp was not alleged to be failing in his college course studies. The

ALJ properly found this to be inconsistent with a finding of mental retardation."

*Popp v. Heckler,*  779 F.2d 1497, 1499-1500 (11th Cir.1986).  Furthermore, the

Court noted in that case that the plaintiff asserted he became mentally retarded due

to the onset of severe depression, which would refute a finding of it being a

lifelong condition.  *Id.*, at 1500.

In addition to the I.Q. range requirement, the plaintiff must also possess a

physical or other mental impairment imposing an additional significant work-

related limitation or function.  20 C.F.R. Part 404, Subt. P, App. 1, 12.05 (2009).

The Eleventh Circuit Court of Appeals has held that, "[a]n impairment imposes

significant limitations when its effect on a claimant's ability to perform 'basic

work activities' is more than slight or minimal."  *Edwards by Edwards v. Heckler,*

755 F.2d 1513, 1515 (11th  Cir. 1985).  In addition, "'significant' requires

something less than 'severe' within the meaning" of Listing 12.05C.  *Id.*  The ALJ

13

held that the plaintiff suffered from "severe impairment" of insulin dependent diabetes mellitus since her alleged onset date of disability and that this impairment limits the plaintiff to no more than light work (R. 5M, 5R).  Because a less than "severe" impairment is required under Listing 12.05C, and because the ALJ determined that the plaintiff's impairments were "severe," these impairments meet the "significant limitation" requirement of 12.05C.  Therefore, the court finds that the plaintiff has met the second prong under 12.05C.

## CONCLUSION

Finding that the ALJ erred in failing to find the plaintiff disabled under Listing 12.05C, the court shall reverse the decision of the ALJ and remand case for calculation of benefits owed to the plaintiff from the date of the plaintiff's onset of disability, January 15, 2002, by separate order.

**DONE** and **ORDERED** this the 23rd day of February, 2010.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE